FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 AUG 26  AM 10: 47

LORETTA G. WHYTE
       CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ERIC CALVIN | CIVIL ACTION |
| VERSUS | NO. 04-2626 |
| BURL CAIN, WARDEN | SECTION "S"(4) |

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an Evidentiary Hearing if necessary, and to submit Proposed Findings and Recommendations pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing. *See* Title 28 U.S.C. § 2254(e)(2).[1]

### I.   Factual Background

The petitioner, Eric Calvin ("Calvin"), is incarcerated in the Louisiana State Penitentiary at Angola, Louisiana.[2] On November 24, 1997, Calvin was charged by Bill of Information in Jefferson

---

[1] Under Title 28 U.S.C. § 2254(e)(2), the District Court may hold an Evidentiary Hearing only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by an exercise of due diligence, and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 1, Petition.

Parish with seven counts of armed robbery and four counts of first degree robbery, committed over the course of 12 days, in September and October of 1997.[3]

The record reflects that the four counts leading to this conviction were the armed robbery of Wayne LeBlanc ("LeBlanc") at a Dairy Queen on October 5, 1997, the armed robbery of Lisa Braggs ("Braggs") at an EZ Serve on September 27, 1997, the armed robbery of Katina Cage ("Cage") at an EZ Serve on September 25, 1997, and the first degree robbery of Lillian Quintanilla ("Quintanilla") at a Circle K on October 2, 1997.[4]

Victim LeBlanc testified that Calvin robbed him of several hundred dollars at gunpoint. LeBlanc identified Calvin in a photographic lineup. Jefferson Parish detectives were also able to obtain a license plate number of the vehicle associated with the robbery and learned that Calvin borrowed the vehicle.

Victim Cage also identified Calvin in a photographic lineup. She told detectives that Calvin had a towel partially covering a gun with a silver barrel. He told her to give him the money in the cash register. She backed away from the register and told him to take the money because she had been recently hired and did not know how to open the cash register. Calvin stuck his hand over the counter, hit a button on the register, and the drawer opened. He reached in and retrieved the money, later determined to be $29. He threatened to shoot her if she did not get on the floor, so she complied with his request. After he left, she called 911 and the store manager.

---

[3] St. Rec. Vol. 1 of 3, Bill of Information (2 pages), 11/24/97.

[4] The facts of the case are taken from the Bill of Information and the opinion of the Louisiana Fifth Circuit Court of Appeal on direct appeal. *State v. Calvin*, 781 So.2d 827, 830-31 (La. App. 5th Cir. 2001); St. Rec. Vol. 2 of 3, 5th Cir. Opinion, p. 3-5, 2/28/01.

Victims Braggs and Quintanilla also both identified Calvin in a photographic lineup. Quintanilla testified at trial that Calvin placed something under his shirt, which she could not identify, but he told her that he had a gun. He demanded money and stole $27 to $30.

Braggs testified that Calvin entered the store while she was alone and asked her for a pack of cigarettes. He told her that he had a gun, which she saw sticking out of a towel wrapped around it. Calvin asked her to open the register and he reached over and grabbed no more than $60 from the register drawer. He told her to get on the ground, took the cigarettes, and ran out of the store.

After his arrest, Calvin voluntarily gave a statement concerning his involvement in the robberies which was played in part at trial. In that statement, Calvin admitted that he committed the LeBlanc robbery at the Dairy Queen but stated that the gun he had was a plastic fake. Calvin also admitted having a gun when he robbed Quintanilla. Calvin further confessed that, at the other robberies, he either placed his hand under his shirt or wrapped a towel around his hand and told the victims that he had a gun.

Calvin was tried before a jury for these four robberies on October 13 and 14, 1999.[5] He was found guilty as charged of the three counts of armed robbery of LeBlanc, Braggs, and Cage, and one count of first-degree robbery of Quintanilla.[6] On November 4, 1999, the Trial Court denied Calvin's Motion for Post Verdict Judgment of Acquittal and his Motion for New Trial.[7] The Court thereafter sentenced Calvin to serve 50 years imprisonment on each of the three counts of armed robbery and

---

[5]St. Rec. Vol. 1 of 3, Trial Minutes (2 pages), 10/13/99; Trial Minutes, 10/14/99; Trial Transcript, 10/13/99; Trial Transcript, 10/14/99; St. Rec. Vol. 2 of 3, Trial Transcript (continued), 10/14/99.

[6]St. Rec. Vol. 1 of 3, Trial Minutes, 10/14/99; Jury Verdict (Cage), 10/14/99; Jury Verdict (Braggs), 10/14/99; Jury Verdict (LeBlanc), 10/14/99; Jury Verdict (Quintanilla), 10/14/99.

[7]St. Rec. Vol. 1 of 3, Motion for Post Verdict Judgment of Acquittal (undated); Motion for New Trial, 11/4/99; Sentencing Minutes, 11/4/99; St. Rec. Vol. 2 of 3, Sentencing Transcript, p. 5, 11/4/99.

20 years on the first degree robbery count, with each to run consecutively and without benefit of parole, probation or suspension of sentence.[8] The court also denied Calvin's Motion to Reconsider Sentence.[9] The State thereafter dismissed the remaining four counts of armed robbery and three counts of first degree robbery in the Bill of Information.[10]

Calvin's appointed counsel appealed to the Louisiana Fifth Circuit Court of Appeal alleging insufficient evidence to support the conviction for the robbery of Cage, the sentence was excessive, and the sentence was otherwise improper on several grounds.[11] On February 28, 2001, the Louisiana Fifth Circuit affirmed Calvin's conviction.[12]

Calvin did not seek rehearing or file for timely review in the Louisiana Supreme Court.[13] Therefore, his conviction became final on March 30, 2001, which was 30 days after issuance of the appellate court's opinion and no further appellate review was available.[14] *Roberts v. Cockrell*, 319 F.3d 690, 694-95 (5th Cir. 2003) (an appeal is final when the state defendant does not timely proceed to the next available step in an appeal process).

---

[8] St. Rec. Vol. 1 of 3, Sentencing Minutes, 11/4/99; St. Rec. Vol. 2 of 3, Sentencing Transcript, p. 6, 11/4/99.

[9] St. Rec. Vol. 1 of 3, Motion to Reconsider Sentence (undated); Sentencing Minutes, 11/4/99; St. Rec. Vol. 2 of 3, Sentencing Transcript, p. 7, 11/4/99.

[10] St. Rec. Vol. 1 of 3, Sentencing Minutes, 11/4/99; Bill of Information, p. 1 (District Attorney's notation dated 11/4/99), 11/24/97; St. Rec. Vol. 2 of 3, Sentencing Transcript, p. 7-8, 11/4/99.

[11] St. Rec. Vol. 2 of 3, Appeal Brief, 00-KA-1505, 10/2/00.

[12] *State v. Calvin*, 781 So.2d at 834; St. Rec. Vol. 2 of 3, 5th Cir. Opinion, p. 10, 2/28/01. The Court also directed the Trial Court to clarify to Calvin the period allowed for seeking post-conviction relief under La. Code Crim. P. art. 930.8.

[13] La. S.Ct. R. X§5(a) provides that an application seeking review of the judgment of the court of appeal shall be made within 30 days of the issuance of the judgment. *See also* La. Code Crim. Proc. art. 922(A).

[14] *Id.*

## II. **Procedural Background**

On April 19, 2001, Calvin filed an untimely writ application in the Louisiana Supreme Court raising the same issues presented by his counsel on direct appeal.[15] The Application was denied without reasons on January 4, 2002.[16]

Six months later, on July 3, 2002, Calvin filed an Application for Post Conviction Relief in the Trial Court alleging that the court erred in refusing to give a jury instruction on intoxication and counsel was ineffective for failing to present a meaningful defense or to subpoena the surveillance tapes.[17] The Trial Court denied the application on August 28, 2002, because the jury charge claim was waived because it was not raised on appeal and the ineffective assistance claim was meritless.[18]

According to Louisiana law, Calvin had 30 days, or until September 27, 2002, to file for review of this order in the Louisiana Fifth Circuit. La. App. Rule 4-3; *see also*, La. Code Crim. P. art. 922. However, on September 23, 2002, Calvin filed a Notice of Intent in the Trial Court requesting that the court set a return date for him to file for review in the appellate court. On October 15, 2002, the Trial Court issued an order instructing Calvin to file his writ application within the deadlines set forth in La. App. Rule 4-3. That deadline had already passed.

---

[15]St. Rec. Vol. 2 of 3, La. S. Ct. Writ Application, 01-KH-1112, 4/19/01; La. S. Ct. Letter, 2001-KH-1112, 4/19/01. The Application bears a post-mark date of April 5, 2001, which is 5 days after the filing period expired.

[16]*State ex rel. Calvin v. State*, 805 So.2d 1182 (La. 2002); St. Rec. Vol. 2 of 3, La. S. Ct. Order, 2001-KH-1112, 1/4/02.

[17]St. Rec. Vol. 3 of 3, Application for Post Conviction Relief, 7/3/02.

[18]St. Rec. Vol. 3 of 3, Trial Court Order, 8/28/02.

Calvin filed an untimely Writ Application in the Louisiana Fifth Circuit on October 17, 2002.[19] The court denied the Application on October 22, 2002, finding no error in the Trial Court's August 28, 2002, ruling.[20]

Three months later, on January 17, 2003, Calvin filed another untimely Writ Application in the Louisiana Supreme Court.[21] The Louisiana Supreme Court denied the Application without reasons on January 30, 2004.[22]

### III. Federal Petition

On September 17, 2004, Calvin filed the instant Petition for Federal Habeas Corpus Relief in which he raises five grounds for relief:[23] (1) the Trial Court erred in refusing to give a jury instruction on intoxication; (2) ineffective assistance of counsel for failing to present a meaningful defense; (3) insufficient evidence to support the conviction for the robbery of Cage; and (4) the Trial Court erred in denying the motion for post-verdict judgment of acquittal on the conviction for the robbery of Cage. The State opposes the petition on the basis that it is not timely filed.[24]

---

[19]The record does not contain a copy of this Writ Application. The filing date appears on the face of the court's subsequent order and has been confirmed with the Clerk of the Louisiana Fifth Circuit. St. Rec. Vol. 3 of 3, 5th Cir. Order, 02-KH-1052, 10/22/02.

[20]St. Rec. Vol. 3 of 3, 5th Cir. Order, 02-KH-1052, 10/22/02.

[21]St. Rec. Vol. 3 of 3, La. S. Ct. Writ Application, 03-KH-0183, 1/17/03; La. S. Ct. Letter, 2003-KH-183, 1/17/03. The application was filed more that 30 days after the appellate court's ruling, the period set forth in La. Code Crim. P. art. 922(C) and La. S. Ct. R. X§5(a). The letter from the clerk of the Louisiana Supreme Court indicates that the Application was post-marked "1/3/02." Assuming the clerk meant "1/3/03" or January 3, 2003, that was 43 days after the filing period expired. Assuming the clerk meant "12/3/02" or December 3, 2002, that was 12 days after the filing period expired. The clerk could not have meant 11/3/02 or November 3, 2002, which would have been timely if the court were inclined to apply a state mailbox rule, because that would predate Calvin's cover letter on the writ application.

[22]*State ex rel. Calvin v. State*, 865 So.2d 69 (La. 2004).

[23]Rec. Doc. No. 1, Petition, Memorandum in Support, p.2.

[24]Rec. Doc. No. 3.

## IV. Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, which comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, went into effect on April 24, 1996[25] and applies to habeas petitions filed after that date. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA therefore applies to Calvin's petition, which is deemed filed in this Court under the federal "mailbox rule" on August 11, 2004.[26]

The threshold questions in habeas review under the AEDPA are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State argues that Calvin's federal petition is untimely filed. The State did not address the preliminary issue of exhaustion. Nevertheless, the Court finds that Calvin has exhausted state court remedies. However, the Court finds for the following reasons, that Calvin's petition is not timely filed and must be dismissed for that reason.

---

[25] The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 (5th Cir. 1992).

[26] The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Calvin's petition on September 17, 2004, the date on which the filing fee was paid. Calvin, however, signed the petition on August 11, 2004, which is the earliest date he could have submitted it to prison officials for mailing. The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

## V.     Statute of Limitations

The AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final.[27] *Duncan v. Walker*, 533 U.S. 167, 179-80 (2001). Calvin's conviction became final on March 30, 2001, when he did not file for further review after his direct appeal. Under the plain language of § 2244, Calvin had until March 30, 2002, to file a timely federal application for habeas corpus relief which he did not do. Thus, literal application of the statute would bar Calvin's § 2254 petition as of that date unless he is entitled to tolling.

### A.     Equitable Tolling

The doctrine of equitable tolling allows for tolling of the AEDPA's limitation period when the petitioner has been pursuing his rights diligently, and there are rare or extraordinary circumstances preventing timely filing. *Pace v. DiGuglielmo*, 125 S.Ct. 1807, 1814 (2005); *see also Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998), *cert. denied*, 525 U.S. 1091 (1999); *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999). Equitable

---

[27]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--

    A.    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    B.    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

    C.    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    D.    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. Title 28 U.S.C. § 2244(d).

tolling is warranted <u>only</u> in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. *Pace*, 125 S. Ct. at 1814-15; *Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002).

In this case, Calvin has not alleged, and the record does not reflect, any basis for equitable tolling. Therefore, the Court need only determine whether Calvin is entitled to statutory tolling.

### B.    Statutory Tolling

Section 2244(d)(2) provides that the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. *See* Title 28 U.S.C. § 2244(d)(2). In order for a State post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing. *Pace*, 125 S. Ct. at 1812; *Williams v. Cain*, 217 F.3d 303, 306-07 n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir.1999), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999).

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures.'") (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999), *aff'd*, 531 U.S. 4 (2000)); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dilworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction

in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 264 F.3d 310, 316 (3d Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. *Godfrey v. Dretke*, 396 F.3d 681, 686-88 (5th Cir. 2005).

The federal courts have also determined that requests for transcripts and copies from the record are not applications for post-conviction or other collateral review and do not affect the timeliness calculations. *Osborne v. Boone*, 176 F.3d 489, 1999 WL 203523 (10th Cir. Apr. 12, 1999) (Table, Text in Westlaw) (motion for transcripts is not "other collateral review" for tolling purposes); *see also Brown v. Cain*, 112 F. Supp.2d 585, 587 (E.D. La. 2000), *aff'd*, 239 F.3d 365 (5th Cir. 2000); *Gerrets v. Futrell*, 2002 WL 63541 (E.D. La. Jan. 16, 2002); *Jones v. Johnson*, 2001 WL 1006062 at *3 (N.D. Tex. Aug. 13, 2001) (petitioner should file application and then continue to gather transcripts); *Grayson v. Grayson*, 185 F. Supp.2d 747, 751-52 (E.D. Mich. 2002) (delay in receipt of transcript, not required to file an application, does not warrant equitable tolling).

In this case, Calvin's one-year filing period began to run on March 31, 2001, the day after his conviction became final. The filing period ran uninterrupted for 365 days until it expired on March 30, 2002. Calvin had no properly filed state application for post-conviction relief or other collateral review pending during that time period.

The state court record reflects that Calvin filed a writ application in the Louisiana Supreme Court during that time period, on November 19, 2001. That filing, however, was untimely under La.

S. Ct. R. X§5(a) because it was filed more than 30 days after the Louisiana Fifth Circuit ruled on his direct appeal. *See also* La. Code Crim. P. 922(A). Under federal habeas corpus law, this filing cannot be considered in the tolling calculation.

The United States Fifth Circuit Court of Appeals has recognized that, under Louisiana law, specifically La. S. Ct. R. X§5(a), a party must file an application for supervisory writs in the Louisiana Supreme Court within 30 days after the intermediate state appellate court issued its ruling. The rule expressly prohibits any extension of the 30-day period and provides for no exceptions. *Williams*, 217 F.3d at 309; *Boyd v. Ward*, 2001 WL 533221 (E.D. La. May 15, 2001) (Porteous, J.).

Because of this state procedural rule, the Fifth Circuit has held that a writ application to the Louisiana Supreme Court which fails to comply with La. S. Ct. R. X§5(a) is not properly filed because it is untimely, and post-conviction review is not pending for purposes of the AEDPA's statute of limitations and tolling doctrines. *Williams*, 217 F.3d at 309-11; *see also*, *Pace*, 125 S. Ct. at 1812, 1814. Under this doctrine, Calvin cannot benefit from any tolling as a result of his untimely and improperly filed writ application in the Louisiana Supreme Court.[28] *Pace*, 125 S. Ct. at 1812 ("When a postconviction application is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)."). He also is not entitled to any further tolling for his subsequent filings made after expiration of the AEDPA's one year filing period. *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000).

---

[28] Even if a reviewing court were to give Calvin tolling benefit for the pendency any of his untimely filings, this federal habeas corpus petition is still untimely. Considering the many breaches in time between filings (even the untimely filings), as detailed in the procedural history above, Calvin allowed 497 days to pass after finality of his conviction and the filing of his federal petition where no pleadings were pending in any court. Thus, even the generous granting of tolling for his two untimely writs in the Louisiana Supreme Court would not alter the conclusion that his petition is untimely.

Calvin's federal habeas corpus petition is deemed filed under the federal mailbox rule on August 11, 2004, over two years after the expiration of the one-year AEDPA filing period. For these reasons, Calvin's federal habeas petition is untimely and should be dismissed with prejudice as time-barred.

## VI.     Recommendation

It is therefore **RECOMMENDED** that Eric Calvin's Petition for Issuance of a Writ of Habeas Corpus filed pursuant to Title 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 25th day of August, 2005.

KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE